**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

VICTOR WOODARD,

                                        Plaintiff,

        v.                                                          No. 10-CV-1121
                                                                            (DNH/DRH)

CAPTAIN R. SHANLEY and ALBERT PRACK

                                        Defendants.

_____

**APPEARANCES:**                               **OF COUNSEL:**

PRISONERS LEGAL SERVICES OF            JAMES M. BOGIN, ESQ.
    NEW YORK
41 State Street
M112
Albany, New York 12207

HON. ERIC T. SCHNEIDERMAN             C. HARRIS DAGUE, ESQ.
Attorney General for the                      KEVIN P. HICKEY, ESQ.
    State of New York                           Assistant Attorneys General
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

    Plaintiff Victor Woodard ("Woodard"), an inmate in the custody of the New York State

Department of Correctional and Community Supervision ("DOCCS"), brings this action

pursuant to 42 U.S.C. § 1983 alleging that defendants, two DOCCS employees, violated his

constitutional right to due process under the Fourteenth Amendment.  Compl. (Dkt. No. 1).

Presently pending are (1) defendants' motion for judgment on the pleadings pursuant to

_____

        [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Fed. R. Civ. P. 12(c) and (2) Woodard's motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Dkt. Nos. 14, 15.  Both motions are opposed.  Dkt. Nos. 16, 18.  For the following reasons, it is recommended that defendants' motion be granted and Woodard's motion be denied.

## I. Background

While a motion for judgment on the pleadings is limited to consideration of only the pleadings, both parties agree that there are no facts in dispute.  Accordingly, even though Woodard has provided, and the undersigned will consider, documents outside of the record, this consideration is of no consequence because these documents are consistent with the allegations made in the pleadings.

On or about May 12, 2008, Woodard was housed, with more than 1,000 other inmates, in DOCCS Coxsackie Correctional Facility ("Coxsackie").  Woodard's Statement of Material Facts (Dkt. No. 15-1) ¶¶ 1, 25.  On May 12, 2008, Capt. Raymond gave Corrections Counselor Bailey a copy of an anonymous threatening letter which had been received at Coxsackie.  Dkt. No. 15-10 at 1; see also Dkt. No. 15-15 at 15.  Raymond directed Bailey to compare writing samples from the inmate guidance files, beginning with those housed in the D-3 cellblock, for Bailey to determine who authored the letter.  Dkt. No. 15-10 at 1; Dkt. No. 15-15 at 15.  After reviewing approximately twelve guidance files, Bailey examined Woodard's file and concluded that his writing was "similar and consistent to the anonymous letter."  Dkt. No. 15-10 at 1.[2]  Raymond also compared Woodard's writing samples to that of

---

[2] The writing samples, as well as the threatening letter, were provided with Woodard's motion papers.  Dkt. Nos. 15-11 – 15-13.

the anonymous letter and concurred that the author of the letter was Woodard.  Dkt. No. 15-10 at 1.  On May 15, 2008, Woodard was issued a misbehavior report charging him with threats and demonstration in violation of DOCCS rules.  Dkt. No. 15-10.

On May 20, 2008, a hearing was held on the disciplinary charges.  Dkt. No. 15-15. Defendant Shanley presided over the hearing.  Dkt. No. 15-15 at 2.  During the course of the hearing, Woodard confirmed that the writing samples from his guidance folder, which were used by Bailey in her handwriting comparisons, were in fact authored by him.  Dkt. No. 15-15 at 10.  However, Woodard denied authoring the anonymous letter.  Dkt. No. 15-15 at 10.  Shanley stated that he had "over 25 years in the department [and while he would not] . . . say [he's] an expert . . . [he] ha[s] a lot of first hand knowledge . . . with doing handwriting . . . ."  Dkt. No. 15-15 at 11.  Shanley made an independent handwriting determination in Woodard's presence and determined that Woodard was the author of the letter based upon multiple similarities in the writings.  Dkt. No. 15-15 at 11-14.  Raymond confirmed that he had also engaged in an analysis of the writing and concluded that it was Woodard who had authored the anonymous threatening letter.  Dkt. No. 15-15 at 14-15.  Woodard was found guilty of the threatening charge and given a year confinement in the Special Housing Unit ("SHU")[3] and loss of privileges, as well as a recommended loss of two months of good time credits.  Dkt. No. 15-15 at 17.  Shanley stated that he relied upon the written misbehavior report from Bailey, the verbal testimony of Raymond, and his own inspection of the

---

[3]SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

handwriting in arriving at the determination.  Dkt. No. 15-16.

Woodard administratively appealed the decision.  Dkt. No. 15-18-15-21.  The findings were affirmed by defendant Prack.  Dkt. No. 15-22.  Woodard also brought an Article 78 proceeding[4] seeking reversal of the disciplinary hearing.  Compl. at ¶ 27.  Woodard's motion was denied and he sought leave to appeal to the New York Court of Appeals.  Id. at ¶¶ 28-30.  The Court of Appeals granted Woodard's request.  Id. at ¶ 31.  While that appeal was pending, DOCCS administratively reversed Woodard's disciplinary conviction on April 9, 2010, expunged his disciplinary record of the conviction, and released him from SHU after he had served 347 days of his sentence.  Id. at ¶¶ 32-33.   This action followed.


## II. Discussion

Woodard claims that the handwriting evidence relied upon by defendants was insufficient to establish his guilt at the disciplinary hearing resulting in a violation of his due process rights.  Defendants contend that Woodard's claims are meritless and they are entitled to qualified immunity.


### A. Legal Standard

"The standard for granting a Rule 12(c) motion . . . is identical to that of a Rule 12(b)(6) motion for failure to state a claim."  Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001) (citations omitted).  Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim.  When considering a motion to dismiss, "a court

---

[4]N.Y. C.P.L.R. art. 78 establishes the procedure for judicial review of the actions and inactions of state and local government agencies and officials.

must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted).  Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 129 S. Ct. at 1950-51.

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings,

5

depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.

### B. Fourteenth Amendment

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v.

6

McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life.  Id. at 484; Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996). The fact that an inmate has been disciplined with a segregated confinement alone is insufficient to establish an atypical and significant deprivation.  The Second Circuit has articulated a two-part test whereby the length of time a prisoner was placed in segregation as well as "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population" are to be considered.  Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259 (N.D.N.Y.1998).  The Second Circuit has noted that where the period of segregated confinement exceeds thirty days, "refined fact-finding" is required to resolve defendants' claims under Sandin.  Colon v. Howard, 215 F.3d 227, 230 (2d Cir. 2000).  These motions present no issue as to whether Woodard has sufficiently demonstrated a liberty interest.

   The cetral issue presented by these motions is whether the three lay handwriting opinions constituted sufficient evidence to support Woodard's disciplinary conviction. While inmates are not given "the full panoply of [due process] rights," they are still afforded procedural process.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  A prisoner is "entitled to advance written notice . . . ; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition including the evidence relied upon and the reasons for the disciplinary actions taken."  Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted).  The only aspect of Woodard's hearing about which he complains is the

7

sufficiency of the evidence upon which defendants relied for his conviction.

The Supreme Court has held "that the requirements of due process are satisfied if some evidence supports the decision by the [hearing officer] . . " and the Second Circuit has held that the test is whether there was "'reliable evidence' of the inmate's guilt." <u>Luna v. Pico</u>, 356 F.3d 481, 487-88 (2d Cir. 2004); <u>see also</u> <u>Superintendent, Mass. Corr. Inst. v. Hill</u>, 472 U.S. 445, 455 (1985).  As to handwriting evidence, courts in this district have found lay handwriting comparisons sufficient to establish some evidence at a disciplinary disposition. <u>See</u> <u>Neree v. O'Hara</u>, No. 09-CV-802 (MAD/ATB), 2011 WL 3841551, at *18 (N.D.N.Y. July 20, 2011) ("Defendant's . . . identification of plaintiff's handwriting on the confiscated UCC document, based on a comparison of known samples from his guidance file, was adequate evident to establish that plaintiff created the document, particularly since her lay opinion was corroborated by that of the hearing officer . . . ."); <u>Lewis v. Johnson</u>, No. 08-CV-482 (TJM/ATB), 2010 WL 3785771, at 10-*11 (N.D.N.Y. Aug. 5, 2010) (holding that, although "meager," the handwriting comparison and conclusions about authorship of the threatening letter completed by the investigating officer, and corroborated by his Captain, were sufficient to satisfy due process).  The same has been true for courts outside of the Northern District. <u>See</u> <u>Pettus v. McGinnis</u>, 533 F. Supp. 2d 337, 341 n.3 (W.D.N.Y. 2008) (finding that the hearing officer's reliance, in part, on the fact that the threatening letter appeared to be in the inmate's handwriting, "constitute[d] at least some evidence that plaintiff wrote the letter . . . ."); <u>Brown v. Dotson</u>, No. 07-CV-114-03-MU, 2007 WL 1033359, at *3 (W.D.N.C. April 2, 2007) (finding some evidence where "the investigating officer compared the letter to a handwriting sample obtained from Plaintiff's cell and determined the handwriting matched."); <u>Bennett v. Jackson</u>, No. 06-CV-19, 2006 WL 618124, at *2 (E.D.Ark March 9, 2006)

("Defendants did not violate Plaintiff's due process rights by accepting Defendant's . . . testimony that the threatening note was comparable to a sample of Plaintiff's handwriting."); Monier v. Holt, No. CV-05-2062, 2005 WL 3531369, at *2 (M.D.Pa Dec. 21, 2005) ("[Defendant hearing officer] did not violate Petitioner's due process rights by accepting [the officer's] testimony that the threatening note was comparable to a sample of Petitioner's handwriting."). These courts have also held that failing to call an expert witness to verify the handwriting is also not in contravention of the procedural protections outlined in Wolff. Bennett, 2006 WL 618124, at *2 ("Defendants' failure to submit the document for analysis by a handwriting expert did not violate Wolff."); Monier, 2005 WL 3531369, at *2 (same).

    Woodard argues that the facts in these cases, other than Brown and Bennett, considered the handwriting comparisons only in conjunction with other corroborating evidence but did not rest their holdings, as defendants urge here, solely on lay handwriting opinions to satisfy the reliable evidence standard. The Northern District cases included additional facts pointing to the inmates' guilt during their disciplinary hearings. For example, in Neree, the inmate had already been charged with filing UCC documents in contravention of prisoner procedures before defendants found additional paperwork hidden in an area where the inmate had access through work. Neree, 2011 WL 3841551, at *17-*18. Additionally, the paperwork contained corroborating identifying information indicating that the inmate had authored the papers, including his name and inmate number. Id. at *19. In Lewis , the inmate had complained of inmate assaults, in the same area to which the threatening letter was later directed, two days prior to defendants receiving the letter. Lewis, 2010 WL 3785771, at *10. No case has held that such corroborating evidence beyond the lay handwriting opinion testimony is required for the reliable evidence standard

9

to be satisfied.

While there is no requirement for any additional level of corroboration, Shanley's findings indicate corroborating evidence existed and that reliable evidence supported his determination.  Shanley explains that he relied first upon the written report of the correction counselor, detailing the fact that she compared the threatening note to twelve inmate guidance folders before finding a match with Woodard's writing samples.  Shanley then also relied on the testimony, and independent corroboration, of Raymond who had also compared Woodard's samples to the threatening letter and based on his many years in service and commensurate experience concluded that the author of the documents was one and the same.  Finally, Shanley stated that he relied upon his own independent assessment, with Woodard present, based on over twenty years working at the correctional facility evaluating similar cases.  While these types of corroboration are different than those cited in the other two Northern District cases, they nevertheless serve as additional reliable evidence upon which Shanley appropriately relied.  As has often been held, expert witnesses are not required in disciplinary hearings.  Moreover, lay witness writing comparisons have always been held as sufficient inspection for due process purposes. Thus the three lay handwriting opinion s constituted reliable evidence to support the finding of guilt notwithstanding the later administrative reversal and expungement.

Woodard also argues that all of the inmates in these earlier cases were unrepresented. Therefore, given their pro se status, they were not sufficiently sophisticated to make these novel legal arguments.  These contentions are meritless given the special solicitude which pro se litigants have been given by the express direction of the Second Circuit.  The courts already recognize any potential challenges these litigants may encounter given their pro se

status and are careful always to construe the facts and arguments in the light most favorable to them and are encouraged to make any additional arguments which are plausible, yet were omitted, given the legal naivete of these plaintiffs.  See Triestman, 470 F.3d at 477. As the Court must always sua sponte address consider all possible arguments in support of a pro se plaintiff's claims, such contentions are without merit.

Accordingly, defendants' motion for judgment on the pleadings should be granted and Woodard's motion for summary judgment should be denied.


### C. Qualified Immunity

Defendants also contends that they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights . . . immunity might still be available as a bar to . . . suit if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir.1991) (citations omitted).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time

of the alleged violation. <u>Aiken</u>, 236 F. Supp. 2d at 230.  Here, as discussed <u>supra</u>, accepting all of Woodard's allegations as true, Woodard has not shown that defendants violated his constitutional rights.

Even if it could be said that a constitutional violation occurred, the Second Circuit cases have not supplemented the reliable evidence standard to include the requirement that additional corroborating evidence be identified in addition to lay handwriting samples when a threatening letter is being evaluated in a disciplinary hearing.  Neither in 2008 nor to date has the Supreme Court or the Second Circuit held that three lay handwriting opinions do not suffice as a matter of law to prove authorship of a threatening communication.  Thus, a correctional official in the position of Shanley or Prack would not reasonably have known that finding or affirming Woodard's guilt on this evidence would violate Woodard's Fourteenth Amendment right to due process.

Accordingly, for both reasons, it is recommended in the alternative that defendants' motion on this ground be granted.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that:

1. Defendants' motion for judgement on the pleadings (Dkt. No. 14) be **GRANTED** and that judgment be entered for both defendants as to all claims; and

2. Woodard's motion for summary judgment (Dkt. No. 15) be **DENIED** in all respects

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO**

**OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892

F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  December 7, 2011
        Albany, New York

_____
United States Magistrate Judge

13